# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5815 | **DATE** | 12/13/2001 |
| **CASE TITLE** | MG CAPITAL LLC vs. BRIAN T. SULLIVAN, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 1/15/02 at 9:00 a.m. Enter Memorandum Opinion And Order. Defendants' motion to dismiss is granted in part and denied in part. Count IV is dismissed with prejudice. Those portions of claims II, III and VI that are based on the misappropriation of trade secrets are stricken. Defendants' motion to strike plaintiff's punitive damages claim is denied. Defendants' motion for joinder of additional parties is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 17 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 11 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | DEC 17 2001 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MG CAPITAL LLC, a Delaware limited )
liability company, )
)
      Plaintiff, )
)
)   No. 01 C 5815
v. )
)   Judge John W. Darrah
BRIAN T. SULLIVAN and THE SULLIVAN )
COMPANIES, an Illinois corporation, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

DEC 17 2001

Plaintiff, MG Capital LLC (Capital), brought a multi-count complaint against defendants, Brian T. Sullivan (Sullivan) and The Sullivan Companies (Sullivan Companies), alleging violation of the Illinois Trade Secrets Act (765 ILCS 1065 *et seq.*), fraud, breach of fiduciary duty, conversion, breach of contract, and unjust enrichment. Presently before the Court are defendants' motions to dismiss, motion to strike, and alternative motion to join additional parties.

The allegations in the complaint supports the following summary of the purported conduct of the parties.

MG Capital is engaged in the business of evaluating, purchasing, and operating medium-sized manufacturing companies for investment. The success of its business depends on (1) access to leads for potential acquisitions, (2) sources of funding, and (3) the knowledge and ability to determine what are the appropriate considerations to determine whether an acquisition has the potential to be profitable.

Sullivan, an attorney, began working for MG Capital in May 1997 as a vice-president. As

an attorney and vice-president, Sullivan provided legal services to MG Capital. Sullivan also sought out potential acquisitions for MG Capital using potential leads for potential acquisitions provided to him by MG Capital's proprietors and members. Sullivan had access to MG Capital's most valuable and sensitive information. This included access to MG Capital's computerized financial models for analyzing the desirability of potential acquisitions. Such financial models are not known or disclosed to competitors or the public. MG Capital employees, including Sullivan, agreed to maintain the confidentiality of information relating to the financial models.

Sullivan also had access to information concerning potential acquisitions being considered by MG Capital. MG Capital has developed a network of sources for leads to potential acquisitions. These sources are indispensable to MG Capital because the sources are the means in which MG Capital learns of potential acquisition candidates. It was understood by MG Capital employees, including Sullivan, that such information was to be kept confidential.

Sullivan also had access to the identities and lists of MG Capital's high net-worth equity investors, who had been cultivated by its members. The identities of these high net-worth investors is proprietary and of high economic value. The identity of these investors is not public information and otherwise not easy to identify.

While in MG Capital's employ, Sullivan solicited information about potential acquisitions from third parties on behalf of MG Capital. Sullivan held himself out to investors and sources of acquisition leads as a vice-president of MG Capital and pursued acquisitions for MG Capital. Sullivan received training, a salary, and other benefits for his work. Sullivan was unable to complete a single acquisition for MG Capital, and his employment was terminated in August 1998.

Subsequently, MG Capital learned that months before his employment with MG Capital had ended, and while still employed by MG Capital, Sullivan had effectively ceased working on behalf of that company and began devoting his energies to a competing business that he had secretly set up prior to August 1998. Unbeknownst to MG Capital, Sullivan had been operating his own company, Sullivan Companies. The Sullivan Companies advertised itself as focusing on investing in and operating mid-sized manufacturing companies, including those specializing in fabricated metal products.

To establish his company, Sullivan pilfered confidential and proprietary documents and other information from MG Capital in the months prior to his termination. This information included documents listing MG Capital's investors, financial models, and sources of acquisition leads. Sullivan engaged in these activities while he openly represented himself as a vice-president of MG Capital and while still receiving training, a salary, and other benefits from MG Capital.

Shortly after his termination, Sullivan began openly contacting MG Capital's investors and others whose identities were confidential and known to Sullivan only by virtue of his former employment with MG Capital. Sullivan also began calling other MG Capital employees and encouraged them to sue MG Capital and its proprietors, tarnishing MG Capital's goodwill with its remaining employees.

I. Lack of Subject Matter Jurisdiction

Defendants argue that plaintiff has not sufficiently pled diversity jurisdiction. Defendants contend that because plaintiff has not specifically stated the citizenship of the trustees, jurisdiction is not established.

Plaintiff's complaint alleges that plaintiff is a Delaware limited liability company and that "[n]one of its members [trustees] are citizens of or domiciled in Illinois. Its sole members are a Delaware limited liability company whose sole member is a trust organized under the laws of the Cook Islands, and a trust organized under the laws of the State of Delaware." Plaintiff alleges that Sullivan is a citizen of Illinois. While plaintiff does not specifically allege the citizenship of the trustees, it does allege that none of the trustees are citizens of Illinois. Such language sufficiently pleads diversity jurisdiction. *See Lachmund v. ADM Investor Serv., Inc.*, 191 F.3d 777, 782, (7th Cir. 1999) (allegations of the complaint must be construed as true).

II. Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants first argue that the claims against Sullivan Companies should be dismissed because plaintiff has not sufficiently alleged a veil piercing claim.

A corporate entity is disregarded and the veil of limited liability is pierced when: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. *Van Dorn Co. v. Future Chemical & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985).

Plaintiff's complaint alleges, in pertinent part, that there is a unity of interest and

4

ownership between Sullivan and Sullivan Companies, such that they are alter egos of each. Sullivan is the sole shareholder, officer, and director of Sullivan Companies and exerts substantial control over its activities. Sullivan Companies' registered address is the same as Sullivan's. Furthermore, Sullivan Companies has not complied with corporate formalities and does not maintain a separate bank account; and adherence to the fiction that Sullivan Companies had a separate corporate entity would sanction a fraud, promote injustice, and produce inequitable results. These allegations sufficiently plead a veil piercing claim.

Defendants next argue that plaintiff's tort claims are preempted by the Illinois Trade Secrets Act (ITSA).

Section 8(a) of the ITSA provides that: "This Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of trade secret." 765 ILCS 1065/8(a). Therefore, the ITSA is the exclusive remedy for misappropriation of trade secrets. *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962, 1263, 1265 (7th Cir. 1992); *Automed Tech., Inc. v. Eller*, 160 F.Supp.2d 915, 921 (N.D.Ill. 2001) (*Automed*). However, Section 8(b) provides that the ITSA does not affect or displace contractual remedies, other civil remedies that are not based upon misappropriation of trade secrets, and criminal remedies. 765 ILCS 1065/8(b). Thus, common law claims that are based on different theories are permissible. *Automed*, 160 F.Supp.2d at 922.

Count II of MG Capital's complaint is a fraud claim, alleging that Sullivan secretly operated a company that competed directly with MG Capital, Sullivan misappropriated confidential information from MG Capital, and that Sullivan actively concealed the fact that he was misappropriating confidential and proprietary information and used MG Capital's resources

5

to set up a competing business.

Accordingly, MG Capitals fraud claim is based both on the misappropriation of trade secrets and competing with MG Capital and using Capital's resources to set up the acquiring business. The fraud claim based on the misappropriation of trade secrets is preempted by the ITSA and cannot be the basis of the claim. However, the fraud claim based on the remaining allegations - competing with MG Capital and using Capital's resources that do not include the misappropriation of trade secrets -- is not preempted and allows the claim to survive the motion to dismiss. *See Automed*, 160 F.Supp.2d at 922.

Count II of MG Capital's complaint is a breach of fiduciary duty claim, alleging that Sullivan breached his fiduciary duty by misappropriating trade secrets and competing against MG Capital while still in its employ. As found above, the breach of fiduciary claim based on the misappropriation of trade secrets is preempted by the ITSA. However, the claim survives as to the allegations not based on misappropriation of trade secrets – competing against MG Capital while still in its employ. An inference can reasonably be drawn that MG Capital is alleging that Sullivan competed against MG Capital while still employed by MG Capital and that such competition involved conduct not related to the misapplication of trade secrets.

Count IV of MG Capital's complaint is a conversion claim, alleging that Sullivan converted confidential and proprietary information and other documents. The property allegedly converted is the same as the trade secrets allegedly misappropriated. Therefore, the conversion claim is preempted by the ITSA. *See Automed*, 160 F.Supp.2d at 922.

Count VI of MG Capital's complaint is an unjust enrichment claim, alleging that Sullivan has been unjustly enriched by receiving training and compensation from MG Capital while he

was actually working for himself and that Sullivan misappropriated MG Capital's property. As in the fraud and breach and fiduciary claims, the unjust enrichment claim based on the misappropriation of trade secrets is preempted by the ITSA. However, that part of the claim that is independent of the misappropriation -- receiving training and compensation while employed by MG Capital but working for oneself – is not preempted by the ITSA.

Accordingly, Count IV is dismissed with prejudice. Those portions of claims II, III and VI that are based on the misappropriation of trade secrets are stricken.

Defendants also argue that MG Capital failed to allege a misrepresentation in its fraud claim because "the failure to inform a principal that an agent is breaching his fiduciary duty is not a fraud." Defendants cite *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir. 1981) (*Panter*) in support of their argument. Defendants' argument is not persuasive.

The *Panter* court held that because Congress did not intend the federal securities laws to provide a remedy for fraud based on non-disclosure, a plaintiff could not make an end-run around the statute by characterizing the non-disclosure as a breach of fiduciary duty. *Panter*, 646 F.2d at 288.

In the instant case, plaintiff is not bringing its claims pursuant to federal securities laws but under the common law of Illinois, which does allow claims for fraud based on non-disclosure where there is an alleged duty to disclose. *See In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (intent to defraud can be based on an omission that the person knows will create an erroneous impression). Accordingly, plaintiff has sufficiently plead a common law fraud claim.

Defendants argue that plaintiff's breach of contract claim should be dismissed because Illinois does not recognize an implied covenant of confidentiality; therefore, Sullivan "had no

duty to keep confidential general information supplied to him by MG Capital." Defendants' argument is meritless.

To state a claim for breach of contract, plaintiff must allege the existence of a contract, that the plaintiff performed its contractual obligations, that defendant breached the contract, and that the plaintiff suffered damages. *Petri v. Gatlin*, 997 F.Supp. 956, 963-64 (N.D.Ill. 1997) (*Petri*); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. 1997). Count V of plaintiff's complaint sufficiently pleads these elements.

III. Motion to Dismiss Pursuant to 735 ILCS 5/2-619(a)(3)

Defendants also argue that plaintiff's complaint should be dismissed pursuant to 735 ILCS 5/2-619(a)(3).

Pursuant to the Illinois Code of Civil Procedure, subject to the court's discretion, a complaint should be dismissed if there is another action pending between the same parties for the same cause. 735 ILCS 5/2-619(a)(3). However, for this statute to apply to this diversity case, the statute must be state substantive law, and not state procedural law. 28 U.S.C. § 1652; *Eerie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *In re Air Crash Disaster Near Chicago*, 803 F.2d 304, 313-14 (7th Cir. 1986).

The Seventh Circuit has not ruled on whether Section 2-619(a)(3) is procedural or substantive state law (*see Locke v. Benello*, 965 F.2d 534, 537) (7th Cir. 1992) (declining to decide the issue)). The courts within the district are divided on this issue. Generally, those courts that have found § 2-619(a)(3) applies in diversity cases have relied upon *Seaboard Fin. Co. v. Davis*, 276 F.Supp. 507 (N.D.Ill. 1967) (*Seaboard*). See *Praxair v. Slifka*, 61 F.Supp.2d 753, 761 (N.D.Ill. 1999); *Brach & Brach Confections, Inc. v. Redmon*, 988 F.Supp. 1106

8

(N.D.Ill. 1997); *International Ins. Co. v. Certain Underwriters at Lloyd's London*, 1992 WL 675951 (N.D.Ill. 1992) (collectively, finding that § 2-619(a)(3) is substantive law and applies to federal cases). Whereas, those courts that have found that § 2-619(a)(3) is procedural, and does not apply in diversity cases, have generally found that *Seaboard* was accurate at the time it was issued but find that the Supreme Court's later decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), results in the conclusion that under the *Eerie* doctrine, § 2-619(a)(3) does not apply. *See Basic v. Fitzroy*, 949 F.Supp. 1333, 1336 (N.D.Ill. 1996) (*Basic*) affirmed *Basic v. Fitzroy Eng., Ltd.*, 132 F.3d 36 (7th Cir. 1997); *Mattsson v. Gerry Wood Prod. Co.*, 1996 WL 147921 (N.D.Ill. 1996) (*Mattsson*); *ADS Publ'g Serv, Inc. V. Summit Group, Inc.*, 1996 WL 332684 (N.D.Ill. 1996 (*ADS*); *Beggerow v. Affiliated Ins. Consultants, Inc.*, 1996 WL 332684 (N.D.Ill. 1996); *Fifi Hotel Co. v. Davera Corp.*, 846 F.Supp. 1345 (N.D.Ill. 1994) (collectively, finding that § 2-619(a)(3) is procedural law and does not apply to federal cases).

*Basic, Mattsson,* and *ADS* are persuasive; and, although the Seventh Circuit has not decided the issue, it did affirm and adopt the *Basic* court's ruling in an unpublished decision, *Basic*, 132 F.3d at 36. Furthermore, the Illinois courts consider § 2-619(a)(3) to be procedural law. *See People ex. rel. Lehma*, 34 Ill.2d (1966) (finding that § 2-619(a)(3) exists "to foster orderly procedure by preventing a multiplicity of actions"); *Crowell v. Golz*, 319 Ill. App. 3d 184, 191 (Ill. App. Ct. 2001) (Section 2-619(a)(3) "is procedural in nature"); *Village of Mapleton v. Cathy's Tap, Inc.*, 313 Ill. App. 3d 264, 266 (Ill. App. Ct. 2000) ("Section 2-619(a)(3) is an inherently procedural device aimed at avoiding duplicative litigation..."). Accordingly, § 2-619(a)(3) does not apply to the instant case.

IV. Motion To Strike Punitive Damages Claim

Defendants also seek to strike plaintiff's claim for punitive damages, arguing that the complaint fails to adequately allege that plaintiff is entitled to punitive damages.

Punitive damages may be awarded pursuant to the ITSA if the misappropriation was willful and malicious, 765 ILCS 1065/4(b), and are recoverable for torts if such torts are committed with actual malice, fraud, willful conduct by the defendant, or when the defendant acts with gross negligence as to indicate a wanton disregard for the plaintiff's rights, *Stafford v. Puro*, 69 F.3d 1436, 1443 (7th Cir. 1995).

In the present case, plaintiff has sufficiently pled that defendants acted willfully and maliciously and engaged in fraud and/or acted with gross negligence as to indicate a wanton disregard to plaintiff's rights. Accordingly, plaintiff's claims for punitive damages are not stricken. *See Richardson Electronics, Ltd. v. Avnet, Inc.*, 1999 WL 59976 (N.D.Ill. 1999).

Lastly, defendants argue that Alain Kodsi (Kodsi) and Antonio Gracias (Gracias) should be joined as necessary parties pursuant to Federal Rule of Civil Procedure 19.

The purpose of Rule 19 is to permit joinder of all materially interested parties of a single lawsuit in order to protect interested parties and to avoid waste of judicial resources. *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). Joinder pursuant to Rule 19 is a two-step inquiry. First, the court determines if the party is a "necessary party" – a party that should be joined if feasible. If the party should be included in the action, but cannot be so included, the court must determine whether the litigation can proceed in the party's absence. If a judgment cannot be structured in the absence of the party that will protect both the party's own rights and the rights of the existing parties, the unavailable party is regarded as a "indispensable party", and

the action is subject to dismissal. *Thomas v. United States*, 189 F.3d 662, 666 (7th Cir. 1999) (*Thomas*). The court bases its decision on the pleadings as they appear at the time of the proposed joinder. *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2nd Cir. 1990)

The court considers three factors in determining whether a party is a necessary party: (1) whether complete relief can be afforded without joinder, (2) whether the absent party's ability to protect his or her interests will be impaired, and (3) whether the existing parties will be subjected to substantial risk of multiple or inconsistent obligations without joinder. *Thomas*, 189 F.3d at 666.

Defendants contend that Kodsi and Gracias are necessary parties because they have alleged ownership in the same property in which MG Capital claims ownership. Defendants argument is based on a state court proceeding filed by Sullivan against Kodsi, Gracias, MG Capital, and Industrial Powder Coatings Acquisition Corp. (No. 00 L 1973).

In the state action, Sullivan alleged that he formed a partnership with Kodsi and Gracias but was never employed by Kodsi, Gracias or MG Capital, which was formed after the Sullivan, Kodsi, and Gracias' partnership. Sullivan's claims against Kodsi and Gracias include breach of a partnership agreement, breach of joint venture agreement, breach of contract, breach of fiduciary duty, fraudulent misrepresentation, and tortious interference with prospective economic advantage. Kodsi, Gracias, and MG Capital filed a countersuit wherein the allegations of the present lawsuit were first presented. Kodsi and Gracias also filed affirmative defenses that include allegations that Sullivan was an agent of MG Capital and that Sullivan misappropriated confidential and proprietary documents from MG Capital, Kodsi, and Gracias. The countersuit

11

as to MG Capital and all of the affirmative defenses were dismissed. Kodsi and Gracias did not file an amended countersuit, and their amended affirmative defenses include allegations that Sullivan misappropriated confidential and proprietary information from Kodsi and Gracias. MG Capital is not named in the amended affirmative defenses. MG Capital nor Sullivan Companies are presently a party to the state action.

Defendants allege that joinder is necessary because Kodsi and Gracias had previously alleged joint ownership of the trade secrets with MG Capital. Defendants' allegation is based on the dismissed countersuit that was filed in state in court in which Kodsi, Gracias, and MG Capital referred to themselves as "counter-plaintiffs" and alleged that Sullivan improperly took and used "their" trade secrets. The generic use of the term "counter-plaintiffs" in the dismissed countersuit does not demonstrate that Kodsi, Gracias, and MG Capital are claiming ownership in the same trade secrets. Furthermore, Kodsi's and Gracias's amended affirmative defenses assert that Sullivan misappropriated trade secrets that belonged to Kodsi and Gracias; MG Capital is not listed as a potential co-owner of such trade secrets. In addition, the claims in the present case do not allege any type of co-ownership of trade secrets between Kodsi, Gracias, and MG Capital. MG Capital also denies any joint ownership in its response to defendants' motion. Defendants have failed to show that complete relief could not be afforded without joinder.

As to the second factor, the absent parties, Kodsi and Gracias, have not moved to join or intervene in the present suit as plaintiffs and have not indicated that they believe their interests will not be protected or will be impaired without such joinder. Nor has a third-party action been filed against Kodsi and Gracias. *See Davis Co. v. Emerald Casino, Inc.*, 268 F.3d 477 (7th Cir. 2001) (the absent party typically must claim such an interest in the litigation); *United States v.*

*Bower*, 172 F.3d 682, 689 (9th Cir. 1999) (district court did not err in finding joinder was not necessary where absent party was aware of the action and claimed no interest).

V. Motion for Joinder of Additional Parties

Lastly, defendants argue that joinder is necessary because of a substantial risk of inconsistent obligations without joinder. This argument is related to defendants' joint ownership argument rejected above. While Kodsi and Gracias have alleged that Sullivan has unclean hands as an affirmative defense based on the alleged theft of trade secrets that belong to Kodsi and Gracias, these claims are distinct from the present claims. If the state court were to find that Sullivan did steal trade secrets from Kodsi and Gracias, without demonstrating joint ownership of such trade secrets with MG Capital and that such trade secrets are also involved in the present suit, the state court's ruling would have no effect on this litigation. At this stage of litigation, defendants have not demonstrated that a substantial risk of inconsistent obligations without joinder is likely. Accordingly, defendants' motion to join Kodsi and Gracias is denied.

For the reasons stated above, defendants' Motion to Dismiss is granted in part and denied in part. Count IV is dismissed with prejudice. Those portions of claims II, III and VI that are based on the misappropriation of trade secrets are stricken. Defendants' Motion to Strike Plaintiff's Punitive Damages Claim is denied. Defendants' Motion for Joinder of Additional Parties is denied.

Dated: 12-13-01

JOHN W. DARRAH
United States District Judge

13