Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5815 | **DATE** | 5/30/2002 |
| **CASE TITLE** | MG CAPITAL LLC vs. BRIAN T. SULLIVAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to June 27, 2002 at 9:00 a.m. Enter Memorandum Opinion And Order. Counter-defendants' motion to dismiss Sullivan's counterclaims is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 3 1 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 52 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAY 3 1 2002 date mailed notice | |
| LG | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MG CAPITAL LLC, a Delaware limited liability company,

    Plaintiff,

v.

BRIAN T. SULLIVAN and THE SULLIVAN COMPANIES, an Illinois corporation,

    Defendants.

-----

BRIAN T. SULLIVAN,

    Counter-plaintiff,

v.

MG CAPITAL LLC, a Delaware limited liability corporation,

    Counter-defendant,

v.

ALAIN KODSI; ANTONIO GRACIAS; and AMAX PLATING, INC., an Illinois corporation,

    Defendants.

No. 01 C 5815

Judge John W. Darrah

DOCKETED
MAY 3 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, MG Capital LLC ("Capital"), brought a multi-count complaint against Defendants, Brian T. Sullivan ("Sullivan") and The Sullivan Companies ("Sullivan Companies"), alleging violation of the Illinois Trade Secrets Act (765 ILCS 1065 *et seq.*), fraud, breach of fiduciary duty, conversion, breach of contract, and unjust enrichment. On

December 13, 2001, this Court dismissed Plaintiff's conversion claim and denied Sullivan's motion to join Alain Kodsi ("Kodsi") and Antonio Gracias ("Gracias") as necessary parties pursuant to Federal Rule of Civil Procedure 19.

In February 2000, Sullivan filed a multi-count complaint in the Circuit Court of Cook County ("State Case") against Kodsi, Gracias, MG Capital, and Industrial Powder Coatings Acquisition Corporation ("IPC"). Subsequently, Sullivan filed a First Amended Complaint in the Circuit Court of Cook County. The Amended Complaint alleged breach of an express partnership agreement (Count I), breach of an implied-in-fact partnership agreement (Count II), breach of an express joint venture agreement (Count III), breach of an implied-in-fact joint venture agreement (Count IV), breach of contract (Count V), breach of an implied-in-fact contract (Count VI), implied-in-law contract/quasi-contract/quantum meruit claim (Count VII), breach of fiduciary duty claim as to express partnership agreement (Count VIII), breach of fiduciary duty as to implied-in-fact partnership agreement (Count IX), breach of fiduciary duty as to express joint venture agreement (Count X), breach of fiduciary duty as to implied-in-fact joint venture agreement (Count XI), breach of fiduciary claim (Count XII), breach of fiduciary duty as to implied-in-fact contract (Count XIII), fraud (Count XIV), and tortious interference with prospective economic advantage (Count XV). All of Sullivan's allegations in the State Case are based on the acquisition of IPC and Kodsi and Gracias's refusal to allow Sullivan to invest in the acquisition.

In September 2000, the state court struck Counts I-VI, VIII, and XIII-XIV with leave to re-plead and dismissed Count XV with prejudice. Sullivan filed a Second Amended Complaint, naming the same defendants and alleging the same general facts. The Second Amended

Complaint re-alleges Counts I-XV.

In January 2002, Sullivan filed a multi-count counterclaim in this action against Capital, Kodsi, Gracias, and Amax Plating, Inc. ("Amax") (collectively "Counter-defendants"), alleging breach of express partnership agreement, breach of express joint venture agreement, breach of contract, breach of employment contract, violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/2), quantum meruit, breach of fiduciary duty, tortious interference with contract, and fraudulent conveyance. Presently before the Court is Counter-defendants' motion to dismiss Sullivan's counterclaims.

The allegations in Plaintiff's complaint supports the following summary of the purported conduct of the parties.

MG Capital is engaged in the business of evaluating, purchasing, and operating medium-sized manufacturing companies for investment. Sullivan, an attorney, began working for MG Capital in May 1997 as a vice-president. Sullivan sought out potential acquisitions for MG Capital using potential leads for potential acquisitions provided to him by MG Capital's proprietors and members. Sullivan had access to MG Capital's valuable, sensitive, and confidential information.

Sullivan also had access to information concerning potential acquisitions being considered by MG Capital. It was understood by MG Capital employees, including Sullivan, that such information was to be kept confidential.

Sullivan also had access to the identities and lists of MG Capital's high net-worth equity investors, who had been cultivated by MG Capital's members. The identity of these investors is not public information and otherwise not easy to identify.

While in MG Capital's employ, Sullivan solicited information about potential acquisitions from third parties on behalf of MG Capital. Sullivan held himself out to investors and sources of acquisition leads as a vice-president of MG Capital and pursued acquisitions for MG Capital. Sullivan was unable to complete a single acquisition for MG Capital, and his employment was terminated in August 1998.

Subsequently, MG Capital learned that months before his employment with MG Capital had ended, and while still employed by MG Capital, Sullivan had effectively ceased working on behalf of that company and began devoting his energies to Sullivan Companies, a competing business that he had secretly set up prior to August 1998. The Sullivan Companies advertised itself as focusing on investing in and operating mid-sized manufacturing companies, including those specializing in fabricated metal products.

To establish his company, Sullivan pilfered confidential and proprietary documents and other information from MG Capital in the months prior to his termination. Sullivan engaged in these activities while he openly represented himself as a vice-president of MG Capital and while still receiving training, a salary, and other benefits from MG Capital.

Shortly after his termination, Sullivan began openly contacting MG Capital's investors and others whose identities were confidential and known to Sullivan only by virtue of his former employment with MG Capital.

The allegations in Sullivan's counterclaim supports the following summary of the purported conduct of the parties as alleged by Sullivan.

In September 1996, Kodsi, Gracias, and Sullivan entered into an oral agreement to establish a business relationship. The agreement provided, in part, that Gracias, Kodsi, and

Sullivan would invest equally in any acquisitions that Sullivan identified, helped identify, or otherwise assisted with. In May 1997, Kodsi and Gracias formed MG Capital. Thereafter, Kodsi and Gracias carried out their efforts on behalf of the business relationship both individually and through MG Capital.

In October 1997, Sullivan identified Industrial Coatings, Inc. ("IPC") as a company for the partnership to pursue. In February 1998, IPC became available for purchase, and Sullivan began working on acquiring the company with Gracias and Kodsi. In February 1998, MG Capital executed a letter of intent agreement to purchase IPC. At a meeting that same month, Kodsi and Gracias told Sullivan that he would not be permitted to invest in the purchase of IPC. Kodsi and Gracias stated that they and MG Capital were only interested in acquiring IPC to merge it with two of Kodsi's and Gracias's other companies, Amax and Connector Service Corporation ("CSC"). Because Sullivan had not invested in either of these two companies, Kodsi and Gracias believed that it would be "unfair" if Sullivan was allowed to invest in IPC. Sullivan subsequently learned that Kodsi and Gracias had invited friends and family to invest in the acquisition of IPC.

In June 1998, Gracias and Kodsi formed a new corporation, Industrial Coatings Acquisition Corporation ("IPAC") to purchase IPC. Kodsi and Gracias owned 80% of IPC; and the remaining 20% was owned by friends, family members, and selected investors. That same month, IPAC purchased IPC. A week later, Gracias informed Sullivan that the IPC transaction was separate and distinct from Amax and CSC, contrary to what he had previously told Sullivan. In July and August 1998, Sullivan demanded that he be allowed to invest in IPC. Kodsi and Gracias refused to allow Sullivan to invest in IPC.

5

Sullivan alleges that there is unity of interest and ownership between Kodsi, Gracias, MG Capital, and Amax, such that Kodsi, Gracias, MG Capital, and Amax are alter egos of one other. All nine claims of Sullivan's counterclaim, except the fraudulent conveyance claim, are identified in the counterclaim as alternatives to Sullivan's case brought in the Cook County Circuit Court in February 2000 ("State Case"). All of the claims are based on the IPC acquisition.

I. Lack of Jurisdiction

Counter-defendants first argue that this Court does not have jurisdiction over Sullivan's claims because his counterclaims are not compulsory and that he cannot establish an independent basis for his claims.

Federal courts have supplemental jurisdiction of compulsory counterclaims. *See Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997). A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Fed. R. Civ. Proc. 13(a). The standard used in making this determination is the "logical relationship" test. The purpose of Rule 13(a) is judicial economy: "to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *In re Price*, 42 F.3d 1068, 1073, (7th Cir. 1994) (*Price*). This is not a formalistic test. The court should consider "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual background." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990) (*Burlington*). The inquiry is not "a wooden application of the common transaction label" but, rather, a careful examination of the factual allegations underlying each claim. *Burlington*. 907 F.2d at 711 (internal quotations

and citations omitted).

In the instant case, Plaintiff's claims arise from the relationship between Sullivan and MG Capital and Sullivan's employment by MG Capital. Sullivan's counterclaims also arise from the relationship between himself and MG Capital, and Kodsi and Gracias, individually and as the owners of MG Capital, and Sullivan's dealings with these entities. In both suits, Sullivan's responsibilities were the same – aiding in the acquisition of companies.

The difference in the suits is the alleged relationship of Sullivan to the other parties, *i.e.*, partner, joint venturer, vice-president, or employee, and the alleged conduct of each of the parties. The present suit pertains to Sullivan's conduct while in the employ of MG Capital. On the other hand, Sullivan's counterclaims are all based on the conduct of the parties as to one acquisition that is not included in the original suit by MG Capital. Furthermore, the legal theory of recovery and law involved in the two cases are varied and do not support a finding that Sullivan's counterclaim is compulsory. Based on the above factors, Sullivan's counterclaim is not compulsory.

Assuming argumendo, that Sullivan's counterclaim is compulsory, the Court would still decline to exercise supplemental jurisdiction because the counterclaims substantially predominate over the original claims and exceptional circumstances exist that demonstrate a compelling reason to decline jurisdiction.

A district court may decline to exercise supplemental jurisdiction if the claims, including counterclaims, would substantially predominate over the claims over which the court has original jurisdiction or in exceptional circumstances demonstrating a compelling reason to decline jurisdiction. 42 U.S.C. § 1367(c)(2), (4); *Channell v. Citicorp Nat'l Serv., Inc.*, 89 F.3d 379,

7

387 (7th Cir. 1996).

Sullivan argues that this Court should retain supplemental jurisdiction over the counterclaims because the State Case and the counterclaims include different parties and different causes of actions. Sullivan argues that MG Capital is not a party in the State Case. However, the Second Amended Complaint includes MG Capital as a defendant and Sullivan has not provided any order from the state court dismissing MG Capital as a defendant. Sullivan also argues that Kodsi and Gracias are named as parties in the instant case only on a veil-piercing claim; whereas, in the State Case, the claims are brought against them in their individual capacity. Furthermore, the counterclaims include causes of action for fraudulent transfers, tortious interference, veil piercing, and violation of the Wage Payment and Collection Act that are not included in the State Case.

A review of the counterclaims and Sullivan's State Case discloses that the underlying allegations in both are based on an alleged agreement (relationship) between Sullivan, Kodsi, and Gracias, and the acquisition of IPC. In fact, the majority of the numbered paragraphs of the counterclaim are verbatim of the paragraphs in the Second Amended Complaint. In the State Case, the allegations are against Kodsi and Gracias as individuals. In the counterclaims, the allegations are against MG Capital, Kodsi and Gracias based on a veil-piercing allegation. However, in Sullivan's own pleadings, the defendants in both are essentially the same in that Sullivan alleges that Kodsi, Gracias, and MG Capital are alter egos of each other. In essence, Sullivan has joined Kodsi and Gracias as defendants in the present action via the counterclaim following this Court's finding that Kodsi and Gracias were not necessary parties to the present action and need not be joined in the original complaint filed by MG Capital.

Sullivan acknowledges that his counterclaims are based on the same facts as the State Case as he identifies the claims in his countersuit as alternative pleadings to his state court complaint. Sullivan does not offer an explanation of why these alternate claims were not brought as alternative pleadings to the already existing State Case to avoid the present piecemeal litigation of claims that are based on the same facts. Nor does Sullivan indicate that he has any intention to bring all of the claims in one court and dismiss the claims in the other court to obviate such piecemeal litigation. Furthermore, because the Second Amended Complaint and counterclaims are based on the same facts and include the same parties, the possibility exists of an inconsistent result in the two courts.

The above demonstrates that Sullivan's numerous counterclaims would predominate over MG Capital's claims over which this Court has original jurisdiction.

The above facts also demonstrate exceptional circumstances exist to compel declining supplemental jurisdiction over Sullivan's counterclaims. Sullivan filed his State Case first and should bring allegations based on exactly the same facts in that case -- as opposed to requiring two different courts to consider the same controversy. Allowing both suits to proceed in each court would be contrary to judicial economy and comity. Accordingly, Sullivan's counterclaims are dismissed without prejudice. *See American Dev., Inc. v. International Union of Operating Engineers*, 1998 WL 774676 (N.D. Ill. Oct 19, 1998) (district court declined jurisdiction over state law claims when similar counts and counterclaims where already pending in state court); *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1404 (N.D. Ill. 1996) (district court declined supplemental jurisdiction due to pending state court action).

In light of the above finding, the Court need not discuss Counter-defendants' remaining

arguments.

For the reasons stated above, Counter-defendants' motion to dismiss Sullivan's counterclaims is granted.

Dated: May 30, 2002

_____
JOHN W. DARRAH
United States District Judge