Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5815 | **DATE** | 6/27/2002 |
| **CASE TITLE** | MG CAPITAL LLC vs. BRIAN T. SULLIVAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Status hearing held. Enter Memorandum Opinion And Order. Counterplaintiff's motion to compel return of privileged documents is denied. All motions to extend discovery is granted. Discovery is extended to 9/10/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | JUL 0 1 2002 date docketed | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 55 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | JUL 0 1 2002 date mailed notice | |
| LG | courtroom deputy's initials | 02 JUN 28 PM 4:20 Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MG CAPITAL LLC, a Delaware limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| | ) No. 01 C 5815 |
| v. | ) ) Judge John W. Darrah |
| BRIAN T. SULLIVAN and THE SULLIVAN COMPANIES, an Illinois corporation, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Counterplaintiff, Brian T. Sullivan ("Sullivan"), moves to compel Counterdefendants, MG Capital LLC, Alain Kodsi ("Kodsi"), Antonio Gracias ("Gracias"), and Amax Plating, Inc., to return an alleged privileged document that was inadvertently produced to Counterdefendants. Counterdefendants argue that the document is not privileged and that any privilege has been waived.

In August 1998, Sullivan met with Bradford Lyerla ("Lyerla"), an attorney who was then representing a different plaintiff in a case against Kodsi and Gracias, *Connector Serv. Corp. v. Briggs*, No. 97 C 7088 (N.D. Ill.) (*Briggs*). At that time, Sullivan had been terminated from Counterdefendants. When Lyerla agreed to speak with Sullivan, he informed him it was on the condition that Sullivan not convey information to him that Sullivan could expect to be confidential. Sullivan responded, "None of this is confidential."

On August 19, 1998, Lyerla wrote Sullivan a letter regarding Lyerla and Sullivan's meeting ("August 19 Letter"). Sullivan responded by letter to Lyerla's August 19 Letter. Less than two weeks after his meeting with Sullivan, Lyerla deposed Sullivan in the *Briggs* case.

55

During the deposition, Lyerla asked Sullivan questions that are the subject of the August 19 Letter.

In September 1998, Lyerla was deposed in the *Briggs* case. At the deposition, the August 19 Letter was inadvertently given to defendant's counsel. Immediately upon learning that the letter had been given to defendant, Lyerla asked for the letter back. Defendant's counsel refused to give the letter back, and it was given to the court reporter by agreement of the parties. Lyerla asked that defendant's counsel not show the letter to Gracias. The letter was not filed with a court and did not contain any indication that it was filed under seal.

On October 5, 2001, Counterdefendants produced approximately 6,000 pages of documents at the Counterdefendants' office for review by Sullivan. The materials were reviewed by Sullivan and his counsel prior to copying. The August 19 Letter was included in the first box of materials produced and reviewed.

In December 2001, Lyerla provided both parties a total of seventy pages of documents pursuant to a subpoena in this case. The August 19 Letter constituted the last two pages of the documents. The August 19 Letter was inadvertently included in these documents by Lyerla's paralegal. Lyerla had previously indicated to Counterdefendants that the August 19 Letter was privileged pursuant to the attorney-client privilege and was not going to be disclosed based on that privilege.

On March 15, 2002, at Lyerla's deposition in the present case, Sullivan claimed that he first learned that the August 19 Letter was inadvertently provided to Counterdefendants in December 2001 as part of the documents that had been provided by Lyerla. Sullivan then sought the return of the letter. Defendants refused to return the letter. On April 10, 2002, Sullivan filed

the present motion.

The party seeking to invoke the attorney-client privilege bears the burden of proving the essential elements of the privilege. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (*Evans*). The elements include: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relate to that purpose, (4) are made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except if the protection is waived.

Counterdefendants first argue that the August 19 Letter is not privileged because the purpose of Sullivan and Lyerla's meeting was for Sullivan to discuss the *Briggs* case and to provide Lyerla with confidential documents about that case. Counterdefendants concede that Sullivan did discuss with Lyerla whether Lyerla could represent Sullivan in a law suit against the Counterdefendants. Sullivan avers that the meeting took place to determine if Lyerla would represent Sullivan in a law suit against Counterdefendants. Lyerla's August 19 Letter supports Sullivan's averment, as Lyerla denied representing Sullivan in his possible suit against Counterdefendants. Accordingly, Sullivan sought legal advice from an attorney.

Counterdefendants also argue that the August 19 Letter is not privileged as it was not made in confidence because Lyerla informed Sullivan when they met not to "tell [him] anything confidential". However, Sullivan contends that Lyerla was informing Sullivan not to discuss anything confidential in relation to the *Briggs* case because Lyerla represented the plaintiff in that suit and Sullivan was involved in representing the defendants in that case while he was employed by Counterdefendants. Sullivan's contention is bellied by the August 19 Letter that indicates that the information shared at the meeting was not confidential, and Lyerla's September 2, 1998

3

deposition transcript in which Lyerla states that when Sullivan first came to see him he informed Sullivan not to tell him anything confidential and Sullivan replied that none of the information was confidential. Furthermore, Lyerla asked Sullivan questions about their meeting in Sullivan's deposition that was taken shortly after Sullivan and Lyerla had their meeting.

Counterdefendants next argue that the privilege was waived. Courts look at the circumstances surrounding the disclosure of materials in determining whether the disclosure was inadvertent. In the instant case, Sullivan argues that the circumstances of the disclosure of the August 19 Letter in both 1998 and 2001 were inadvertent.

Assuming argumendo that the letter is privileged and was inadvertently disclosed, it must be determined whether Sullivan waived the privilege. The party seeking to assert the privilege bears the burden of showing that the privilege was not waived. *See Evans*, 113 F.3d at 1461; *Consolidated Litig. Concerning Harvesters Disposition of Wis. Steel*, 666 F.Supp. 1148, 1157 (N.D. Ill. 1987).

Inadvertent disclosure can, but not necessarily always, result in the same result as intentional waiver. *See Dellwood Farms, Inc. V. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997) (*Dellwood*). When waiver is found based on the inadvertent disclosure of material, it is intended to punish the person claiming the privilege for a mistake. *Dellwood*, 128 F.3d at 1127. However, committing a mistake "is not by itself a compelling reason for stripping a person of his privilege". The severity of the punishment for a mistake should be proportionate to the gravity of the mistake. *Dellwood*, 128 F.3d at 1127.

This standard set forth in *Dellwood* governs waiver of a privileged document due to inadvertence. *International Oil, Chemical & Atomic Workers, Local 7-517 v. Uno-ven Co.*, 170

4

F.3d 779, 784 (7th Cir. 1999). Generally, this standard is applied using a balancing test. *See Snap-On Inc, v. Hunter Eng. Co.*, 29 F. Supp. 2d 965, 972 (E.D. Wis. 1998) (*Snap-On*); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 1571447 (N.D. Ill. Dec. 7, 2001) (*R.J. Reynolds*); *Sanner v. Board of Trade of the City of Chicago*, 181 F.R.D. 374, 379 (N.D. Ill. 1998); *International Oil, Chemical & Atomic Workers, Local 7-517 v. Uno-ven Co.*, 1998 WL 100264 (N.D. Ill. Feb. 23, 1998) (collectively finding that the balancing test comports with standard set forth in *Dellwood*); *see also Urban Outfitters, Inc. v. DPIC Co.*, 203 F.R.D. 376, 380 (N.D. Ill. 2001) (*Urban Outfitters*); *Tokar v. City of Chicago*, 1999 WL 138814 (N.D. Ill. March 5, 1999) (*Tokar*) (applying balancing test without citation to *Dellwood*).

Under the balancing test, a court weighs: (1) the reasonableness of the precautions taken to prevent the disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) the overriding issue of fairness. *Urban Outfitters*, 203 F.R.D. 380.

Reasonableness of Precautions Taken to Prevent the Disclosure

In the instant case, the August 19 Letter was first inadvertently disclosed at the September 1998 deposition., At that time, it was asked that the document be returned. When defendant's counsel refused to return the letter, the letter was given to the court reporter. While Sullivan contends that it was placed under seal, documents are not placed under seal by the court reporter but are placed under seal by the court. *See* N.D. Ill. Local Rule 26.2. No further action was taken concerning the document at that time. The failure to properly place the document under seal and to take any further action was not a reasonable precaution to prevent disclosure.

The August 19 Letter was again disclosed in December 2001 when Lyerla included the

5

letter in his document production. This production occurred within the context of formal discovery and was available for attorney review. Furthermore, the parties were aware that the same document had previously been inadvertently disclosed in Lyerla's deposition. Accordingly, reasonable precautions were not taken to prevent disclosure. *See Urban Outfitters*, 203 F.R.D. at 380 (party did not take reasonable precaution to avoid disclosure where document was produced during formal discovery and pursuant to attorney review).

Time Taken to Rectify the Error

As to the first inadvertent disclosure, the time taken to rectify the error was unreasonable and not appropriate. Immediately upon notice that the letter had been disclosed, Lyerla stated that the letter was privileged and asked for its return. After the opposing party would not return the document, it was given to the court reporter. However, the document was never placed under seal by a court of law. *See* N.D. Ill. Local Rule 26.2. No further action was taken.

Sullivan next became aware that the letter had been disclosed on March 15, 2002, at Lyerla's deposition in the instant case. Sullivan asked for the return of the document. Counterdefendants refused to return the document. Sullivan did not ask to have the document be placed under seal and did not seek assistance from the Court for almost one month. Not placing the document under seal and waiting almost a month after having knowledge that they had possession of a privileged document, and that it refused to return such document, was not a reasonable and appropriate response to rectify the error in a timely manner.

Furthermore, Sullivan could have become aware that the letter had been disclosed in October 2001 and December 2001 if a more thorough or proper review of documents had taken place, and he could have rectified the error in a more timely manner based on such knowledge.

### Scope of the Discovery

In the present case, the scope of the discovery was relatively small. Lyerla disclosed the document in only seventy pages of documents. *See Urban Outfitters*, 203 F.R.D. at 380 (waiver found when document included in a total of forty documents); *Tokar*, 1999 WL 138814 at * 2 (waiver found in document production of approximately 2,000 pages); *cf. R.J. Reynolds*, 2001 WL 1571447 at * 3 (waiver not found in document production of 750,000 pages).

### Extent of the Disclosure

The contents of the August 19 Letter were disclosed at Lyerla's deposition. The full contents of the August 19 Letter were disclosed a second time in December 2001 when Lyerla sent the letter to each party as part of his document production. Sullivan did not seek return of the document until March 2002 and did not seek court assistance until April 2002. Accordingly, the inadvertent disclosure was complete. *See Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 389 (S.D. Ind. 1997) (extent of disclosure complete when opposing party had opportunity to read the document prior to the request to return the letter); *Central Die Casting & Manuf., Co. v. Tokheim Corp.*, 1994 WL 444796 (N.D. Ill. Aug. 16, 1994) (same).

### Overriding Issue of Fairness

Although it can be argued that it is unfair to waive Sullivan's privilege because of others' negligence, the fairness issue still weighs in favor of Counterdefendants. The August 19 Letter was turned over as part of seventy pages of documents. Sullivan had the opportunity to review the document production and identify the inadvertent disclosure. Three months later, Sullivan became aware of the inadvertent disclosure. At this time, the document had already been fully disclosed, and Counterdefendants contend that the letter is highly relevant to their defense. "The

disclosure of the [August 19 Letter] is a bell that has already been rung. The court cannot unring it by ordering that copies be returned to [Sullivan]." *Draus*, 172 F.R.D. at 389; *see also Central Die*, 1994 WL 444796 at * 5 (finding fairness weighed in favor of opposing party after document had been fully disclosed and relied upon by opposing party).

In sum, the above factors weigh in favor of finding waiver as to the first inadvertent disclosure in September 1998. In addition, each factor weighs in favor of finding waiver of the privilege as to the second inadvertent disclosure. Accordingly, Sullivan has waived the attorney-client privilege as to the August 19 Letter.

For the reasons stated above, Counterplaintiff's Motion to Compel Return of Privileged Documents is denied.

Dated: June 27, 2002

JOHN W. DARRAH
United States District Judge